IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOHN N. HARAMALIS, )
 )
       Plaintiff, )
 )
v. ) No. 1:17-cv-946 (LMB/MSN)
 )
JOSEPH LENGYEL, Chief, National Guard )
  Bureau, et al., )
 )
       Defendants.

## MEMORANDUM OPINION

Before the Court is defendants' Motion to Dismiss [Dkt. No. 29]. For the reasons that follow, defendants' Motion will be granted.

### I. BACKGROUND

In this civil action, plaintiff John N. Haramalis ("Haramalis") alleges that officials in the Army and/or National Guard Bureau ("NGB"), who are under the command of defendants Joseph Lengyel ("Lengyel"), the Chief of the NGB, and Ryan McCarthy ("McCarthy"), the Acting Secretary of the Army, have illegally blocked a request to extend his Mandatory Removal Date ("MRD"), forcing him to retire from the military and depriving him of future opportunities for employment and advancement. He seeks declaratory and injunctive relief, as well as a writ of mandamus.

Haramalis, who had the rank of colonel[1] in the United States Army when he filed this lawsuit, has had a lengthy and distinguished military career. Compl. [Dkt. No. 1] ¶¶ 8-10. Until recently, Haramalis had been on active duty, on the "Reserve Active-Status List" ("RASL") at

---

[1] As will be discussed below, Haramalis's MRD was August 31, 2017. The Court has not granted injunctive relief and therefore assumes that Haramalis has been discharged from the military and is no longer an active colonel; however, the parties' briefs do not address the question.

the NGB. Id. ¶ 8.[2] Officers who are on the RASL are statutorily subject to removal from the list once they reach their MRD, which is based on rank and number of years of service. 10 U.S.C. § 14507. By statute, the Secretary may retain an officer on the RASL past the MRD in certain limited circumstances. Id. §§ 14701-14702.

While Haramalis was on federal active duty at the NGB, the head of the California Army National Guard ("CANG"), in which Haramalis had had an appointment before going on active duty, informed him that he would not be nominating him for a promotion but that he would support Haramalis's efforts to move to another state's national guard and seek career advancement. Compl. ¶ 11. Haramalis interviewed with the Adjutant General of the Arizona Army National Guard ("AANG"), Major General Michael T. McGuire ("General McGuire"). Id. In his Complaint, Haramalis alleges that General McGuire offered him a position and agreed to nominate him for a promotion. Id. ¶¶ 11-12. Haramalis believes that this angered the head of the CANG, who allegedly blocked the release of Haramalis's records to the AANG, resulting in the expiration of the position. Id. ¶¶ 12-13. Haramalis filed a civil action in California state court relating to these actions by the CANG but did not receive the relief he wanted. Id. ¶ 13.

In late 2016, Haramalis learned of a dual-status technician opportunity with the AANG, which would have required the extension of his MRD while he worked as a civilian employee of the AANG. Id. ¶ 14. He again asked the CANG to release his records but was unsuccessful and, eventually, filed a federal civil action in the United States District Court for the Eastern District

---

[2] As explained in defendants' brief, the Army National Guard ("ARNG") is managed by both the federal and state governments. Officers in the ARNG are appointed by state officials but the NGB can "federally recognize" state appointments, resulting in an appointment in the Army Reserves and, concurrently, an assignment to the Army National Guard of the United States ("ARNGUS"). At that point, the officer holds both a state (ARNG) appointment and a federal (ARNGUS) appointment. When an ARNGUS officer is called to active duty, he loses his state appointment. Def. Mem. 3-4. Haramalis, who had previously been in the California Army National Guard, began active duty at the NGB in August 2015. See Compl. ¶¶ 10-11.

of California to compel the release of his records. Id. In March 2017, the CANG published orders separating Haramalis from the CANG and, shortly thereafter, the AANG hired him. Id. ¶ 15. Haramalis alleges that his superiors in the AANG asked him to submit an application for an extension of his MRD. Id. ¶ 16.

To receive an extension of an MRD, an officer must obtain the consent of the Governor of the State with respect to the relevant National Guard, 10 U.S.C. § 12301(d), and the consent of the Secretary of Defense, id. § 14701(a)(1)(A). Typically (and apparently in Arizona), the Governor delegates this authority to the Adjutant General of the State's National Guard. The Secretary of Defense has delegated his authority to the Secretary of the Army, allowing the Army to retain officers "with special skills." See Def. Mem. 6. The Army, in turn, has implemented this delegation of authority through two regulations, AR 140-10 and NGR 635-11. These regulations provide narrow enumerated categories of officers who are eligible for MRD extensions. An officer like Haramalis, who does not fit into any of these enumerated categories, may submit an "exception to policy" application (with the consent of the relevant governor) to apply for a continuation of the MRD. See id. There are no specific criteria to govern the adjudication of these applications, but they may only be approved by Headquarters, Department of the Army ("HQDA"). Id. at 6-7.

According to Haramalis, he was informed in May 2017 by AANG officials that some individual(s) at NGB were "blocking the processing"[3] of his extension request. Id. ¶ 17. Haramalis alleges that AANG officials repeatedly inquired about the situation and that NGB

---

[3] Defendants have submitted an affidavit explaining that Haramalis never submitted an application for processing and that it is impossible for NGB officials to actually block the submission of an application. At the preliminary injunction hearing, plaintiff seemed to concede that he meant "blocking the processing" in a less concrete way and that what he believes actually occurred is that somebody at NGB told the commanding official of the AANG not to submit the application. Prelim. Inj. Tr. [Dkt. No. 17] 7.

officials told them that they were blocking the extension because of a draft regulation that required MRD extensions to be submitted at least six months ahead of the MRD, a deadline plaintiff did not meet because his MRD was August 31, 2017. Id. ¶¶ 17-18.

In late July 2017, Haramalis sought leave to amend his complaint in his still-pending federal civil action in California to add the specific claims and defendants who he has included in this civil action. Id. ¶ 19. He also filed a motion to shorten the time for the hearing of his motion to amend. Id. The court denied his motion. Id. With his MRD approaching, plaintiff filed the pending Complaint in this district and immediately filed a Motion for a Preliminary Injunction [Dkt. No. 3]. Plaintiff's four-count Complaint includes a request for declaratory and injunctive relief establishing that the use of the "draft" regulation to block the processing of his application was ultra vires (Count 1), a procedural due process claim (Count 2), a count claiming violations of substantive due process and occupational liberty (Count 3), and a request for a writ of mandamus directing defendants to approve plaintiff's MRD extension (Count 4).

Defendants have filed a Motion to Dismiss, in which they argue that Haramalis's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because this civil action involves a nonjusticiable military controversy and also constitutes impermissible claim splitting. In addition, they argue that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted when a district court lacks subject matter jurisdiction over a civil action. The burden is on the plaintiff to establish subject matter jurisdiction, and in determining whether jurisdiction exists, the court may examine

both the pleadings as well as evidence outside the pleadings without converting the motion to one for summary judgment. Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A motion to dismiss under Rule 12(b)(6) should be granted if the plaintiff has not pleaded sufficient facts in the Complaint to plausibly allege that the defendant is liable. In adjudicating a Rule 12(b)(6) motion, the court must accept as true all well-pleaded allegations but need not credit conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the motion to dismiss must be granted. Id. at 679.

### B. Analysis

The Fourth Circuit has adopted the Mindes test for "determining whether particular actions of military authorities are properly reviewable by the civilian courts." Williams v. Wilson, 762 F.2d 357, 359 (4th Cir. 1985). Under the Mindes test, a plaintiff must first allege the deprivation of a constitutional right or that the military has acted in violation of statutes or regulations and also show that he has exhausted available intraservice corrective measures. Mindes v. Seaman, 453 F.2d 197, 201 (5th Cir. 1971). If a plaintiff gets over this initial hurdle, the district court must balance four factors to determine whether a particular dispute is amenable to resolution in civilian courts. Id. These factors include the nature and strength of the plaintiff's case (with constitutional claims valued more highly than statutory or regulatory claims), the potential injury to the plaintiff if review is refused, the type and degree of interference with the military function, and the extent to which the exercise of military expertise or discretion is involved. Id. at 201-02.

Here, plaintiff has alleged violations of the Constitution, but he has not exhausted his administrative remedies. As plaintiff acknowledges, he has not brought his claim before the Army Board for Correction of Military Records ("ABCMR"); however, he argues that his failure to exhaust should be excused. Pl. Opp. [Dkt. No. 32] 17-20. Specifically, Haramalis appears to argue that he should not be forced to bring his claim to the ABCMR because it could take up to three years for them to reach a decision and they would not be able to grant him full relief. According to Haramalis, all the ABCMR could require "would be that NGB and the Department of the Army . . . allow the submission and processing of plaintiff's MRD extension request," not that he actually be reinstated. Id. at 18. In addition, plaintiff argues that an MRD extension would "likely be for a period of two years beyond his original MRD date," and therefore exhausting the ABCMR process would be futile because it would likely not result in a resolution in fewer than two years. Id. at 19.

In the ABCMR context, exhaustion may be excused if the "outcome would predictably be futile," Guerra v. Scruggs, 942 F.2d 270, 276 (4th Cir. 1991) (internal quotation marks omitted); however, this is an extremely high bar. In Guerra, the plaintiff was not guaranteed a hearing before the ABCMR, the ABCMR had recently ruled (in a separate case) against the argument he intended to advance, and the ABCMR was not empowered to grant him a portion of the relief he sought. Id. at 286-87. Nevertheless, the court held that his failure to exhaust was not excused because there was no "dire consequence" of requiring exhaustion and "the consequence of delay . . . is outweighed by the considerations of efficiency and agency expertise in requiring exhaustion." Id. at 277.

Similarly, in Williams, the Fourth Circuit held that the district court had erred by not dismissing the plaintiff's Complaint for failure to exhaust even though the ABCMR lacked the

6

authority to order the plaintiff's reinstatement in the West Virginia Army National Guard. See Williams, 762 F.2d at 360 & n.6 ("While the ABCMR lacks authority to order the West Virginia Army National Guard to reinstate Williams were it to find in his favor, it would have the power to correct Williams' federal records to show that his federal recognition has not been withdrawn, reinstate Williams in a comparable active federal reserve status, restore his pay and order compensatory back pay."). More recently, in Plofchan v. Fanning, No. 1:16-cv-550, 2016 WL 3640685 (E.D. Va. June 29, 2016), this court rejected a plaintiff's claims that his failure to exhaust ABCMR remedies should be excused. In Plofchan, the plaintiff, who had been discharged from the Army, argued that any ABCMR appeal would be futile because the ABCMR had consistently rejected the argument he would be making and that the process would take years, causing him to miss out on training and career advancement opportunities. Id. at *3. This court rejected this argument, holding that the case was similar to Guerra and requiring the plaintiff to exhaust would not result in any "dire consequences." Id.

One Fourth Circuit case[4] has held that a failure to exhaust ABCMR remedies should be excused. In United States ex rel. Brooks v. Clifford, 412 F.2d 1137 (4th Cir. 1969), the servicemember filed a habeas corpus petition in federal district court challenging the denial of his request to be discharged as a conscientious objector, without first going to the ABCMR. In holding that servicemembers in the petitioner's position did not need to bring their claims to the ABCMR,[5] the court found that exhaustion would be futile because requiring exhaustion would

---

[4] This case is cited extensively in the various cases cited by defendants and plaintiff, but neither party cites directly to this case.
[5] The Court observes that this is slightly different than holding that a particular individual's failure to exhaust should be excused, which is what Haramalis urges the Court to hold in this civil action. That being said, the considerations advanced are the same, and later Fourth Circuit and Eastern District of Virginia cases have treated the Clifford opinion as substantively holding that a failure to exhaust should be excused in this context.

force the "petitioner, and others similarly situated, . . . to litigate administratively during a period of which each hour of each day they are required to engage in conduct inimical to their consciences." Id. at 1140.

Haramalis has not met the high bar needed to excuse his failure to exhaust. Although the ABCMR may not be able to grant him full relief, he admits that it can order the NGB and the Department of the Army "to allow the submission and processing of plaintiff's MRD extension request." Pl. Opp. 18. Even assuming this is less than what this Court can order,[6] Fourth Circuit precedent makes clear that the inability to obtain full relief is not a valid excuse for failure to exhaust. Moreover, although plaintiff alleges that an MRD extension would likely be for only two years, his Complaint makes clear that an MRD extension of up to five years may be granted. Compl. ¶ 7. In addition, Haramalis can point to no "dire consequences" of requiring him to exhaust on par with those in Clifford, and the ABCMR's ability to engage in intraservice fact-finding as well as their expertise at interpreting and applying the relevant Army and National Guard regulations incline in favor of requiring exhaustion.

Although the Court was strongly inclined to dismiss this Complaint for failure to exhaust based on the pleadings after hearing argument on defendants' Motion to Dismiss, the Court granted plaintiff's request for limited discovery to take the deposition of General McGuire, who has been the head of the AANG at all times relevant to this litigation. [Dkt. No. 38]. That deposition was taken, and based on the transcript of that deposition [Dkt. No. 42], it is now clear

---

[6] Haramalis appears to be laboring under the assumption that this Court can order the NGB or the Army to grant his MRD extension. Given that his extension request has never been submitted by the AANG and that the approval of the Governor of Arizona (through the Adjutant General of the AANG) is a statutory condition precedent to the granting of the request, it seems unlikely that the Court would actually be able to order any more than that defendants—the NGB and Department of the Army—remove any barriers they have placed in the way of plaintiff's submission. Therefore, the ABCMR and the Court can likely order the exact same relief.

that plaintiff has no case because General McGuire unequivocally testified that only he could a file a request for waiver of plaintiff's MRD and that he did not and would not submit such a request to the NGB because plaintiff was not in a qualifying dual-status position. McGuire Dep. Tr. 20:4-:17 ("The only way that we have a process to extend his MRD would be to put him in a dual-status Title 32 technician position and then submit that request to the National Guard Bureau. . . . [I]t's my policy that I don't submit MRD extensions for AGRs or M-day soldiers that have no other overriding conflict, and so – and to date, we haven't been able to process any of those.")[7]; see also 10 U.S.C. § 12301(d); Def. Mem. 6. Although a dual-status position was open in 2016 and offered to plaintiff, because his California unit would not release his papers, plaintiff was unable to fill the position and when his papers were finally released and he joined the Arizona unit, the dual-status position was no longer available. Because it was General McGuire's policy not to recommend anyone for an MRD if he were not in a dual-status position, no request for an MRD extension was ever submitted by the AANG. General McGuire also admitted being aware of a 180-day rule, but discounted it as playing any part in his decision not to submit a request for an MRD extension for plaintiff. McGuire Dep. Tr. 76, 90. He also denied that anyone had discouraged him or blocked him from submitting an MRD extension request for plaintiff. Id. at 89-90.

Allowing this limited discovery has assured the Court that there is no likelihood that plaintiff could prevail on the merits as to his claims against either of the two defendants named

---

[7] General McGuire repeated this position multiple times during his deposition. See, e.g., McGuire Dep. Tr. 69:19-:25 ("[T]he only option he had to serve and obtain an MRD extension would be to come to Arizona as an Arizona Guardsman, be assigned to a dual-status Title 32 military technician position, and then seek . . . an MRD extension endorsed by me to NGB. That is the process."); id. at 77:11-:19 ("[The dual-status Title 32 federal technician position] is the only justification that I would allow him to extend. . . . I don't know if there's other caveats, because that's the only thing I would ever consider.").

in this civil action. Moreover, as discussed above, plaintiff has failed to properly exhaust his administrative remedies.

III. CONCLUSION

Accordingly, for all the reasons stated above, defendants' Motion to Dismiss [Dkt. No. 29] will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 18th day of January, 2018.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge